THOMAS WINTERS v. FLEECE et al.

CONTRACT. *Contractor and sub-contractor.* Under a contract between a contractor for the grading of a railroad, and a sub-contractor of a part of the same work, which stipulated for the retaining, by the contractor, of a certain per centage of the monthly estimates as collateral security for the execution of the contract,* and provided, in the event the sub-contractor failed to keep a sufficient force at work to complete it in time, that the contractor might put a force on said work at his expense, or declare a forfeiture, and re-let or do the work and hold the sub-contractor liable for any damage or injury by reason of his failure, the sub-contractor left the work, and the contractor declared a forfeiture, but neither re-let or did any further work, and, by agreement with the railroad company, abandoned the work, after receiving full pay for what had been done. It was held that the per centage retained belonged to the sub-contractor, and was recoverable accordingly.

FROM SHELBY.

Appeal ·from the Chancery Court at Memphis. R. J. MORGAN, Ch.

W. M. RANDOLPH for Complainant.

CAMPBELL & JACKSON for Defendants.

COOPER, J., delivered the opinion of the Court.

The defendants were contractors for grading a number of miles of the Mississippi River railroad. The complainant became a sub-contractor for a portion of the same work, the contract stipulating that the defendants should pay the complainant

eighty-five per cent. of the monthly estimates of the work done, "the remaining fifteen per cent. to be retained as collateral security for the execution of the contract, until the same is fully executed."

The contract further provided that if it should be found that the work was not progressing with sufficient speed to insure its completion by the time stipulated, the complainant should, upon five days notice, increase his force, and upon failure so to do the defendants might "put a force on said work at his expense, or may declare the same forfeited, and enter upon and take possession of the same, and re-let or do the work, and hold him responsible for any damage or injury to them by said failure to comply with the contract."

The work of grading the road was never completed, because of the failure of the company to pay estimates, and its eventual insolvency. Shortly after the defendants ceased entirely to work on the road, they had a settlement with the railroad company and received payment for the full amount of the work actually done, including the work of the complainant under his sub-contract, and the contract was, by mutual consent, abandoned. The complainant ceased work a month or two earlier than some of the other sub-contractors, but no work was afterwards done on that part of the road included in his contract.

On the 27th of January, 1871, a few months after the work was abandoned, the complainant and defendants had a settlement. Each selected a

person to act as an arbitrator or mutual friend in examining the papers and making calculations. These persons found that the account stood thus:

Total estimate. . . . . . . $9,013.02

Total payments. . . $7,416.98

15 per cent retained. 1,351.95—8,768.93—244.09

The balance of $244.09 was afterwards paid by the defendants on the order of the complainant.

This bill was filed for an account, but the litigation is narrowed down to the question whether the complainant is entitled to recover, or the defendant to retain the 15 per cent. of the estimates reserved under the contract, and ascertained to be $1,351.95 as above.

The Chancellor dismissed the bill and the complainant appealed.

The complainant quit work about the 20th of August, 1870, other contractors leaving off near the same time. The testimony of the engineer of the company leaves no doubt that the work was abandoned because of the failure of the Railroad company to pay estimates.

On the 3rd of September, 1870, the defendants gave the complainant written notice to resume work within five days or they would consider "the same abandoned and forfeited, and will act accordingly, reserving and claiming all our rights in the premises." On the 9th of the same month they served on the complainant the following notice: "Having failed and refused to renew work on your contract, we have no course left but to

enter upon it and prosecute it, reserving to our-
selves all rights incident upon its abandonment and
forfeiture." The defendants did not in fact "enter
upon and prosecute" the work after this notice.
It remained as left by the complainant, and its
completion was abandoned by agreement with the
company. The notices could only fix rights under
the contract, not enlarge them. They terminated
the contract, giving the defendants a right to re-
cover expenses or damages under it, incurred in
completing the work.

The contract stipulated for the retention of fif-
teen per cent. of the money earned by complain-
ant, "as collateral security for the execution of the
contract."

This reservation was to be of money earned
by complainant, and therefore of his money. It
was to be retained "as collateral security," that
is, not absolutely either as a penalty or liquidated
damages, but to secure the completion of the work.

The contract provides the mode in which the
work is to be completed, so as to entitle the de-
fendants to indemnity out of the fund, namely, by
putting on a force at the complainant's expense, or
by declaring the work forfeited and re-letting it,
holding the complainant liable for any injury sus-
tained by reason of his failure to comply with the
contract. If the work is done or re-let at the
original contract price there is no expense or dam-
age under the contract, and the money retained
"as collateral security" will belong to the complain-

ant. If the work is not continued, and the defendants are released, with their own consent, from their contract to complete it, the money retained as collateral security for a purpose no longer possible, must be the money of the complainant.

The argument on behalf of the defendants is that the fifteen per cent. constitutes liquidated damages for the breach of the contract. Liquidated damages occur where the parties have agreed that, in case one of them shall do, or omit to do a stipulated act, the other shall receive a certain sum as the just, appropriate and conventional amount of the damages sustained by such act or omission: 2 Story, Eq. Jur., sec. 1318. In this case the parties have not agreed upon a certain sum as damages. On the contrary, the contract provides for the retention of a percentage of earnings "as collateral security," and expressly gives the defendants the right to hold the complainant liable for the expense or damages of completing the work, which may exceed the collateral security. It is obvious, moreover, that a percentage of the monthly earnings could never be a "just or appropriate" amount of damages. For, in the early stages of the work, the amount retained might be grossly inadequate, and towards the completion of the contract, grossly excessive.

There is good reason, therefore, why the parties should not have designed that the retainer should constitute liquidated damages, and it is very certain that they have not so provided.

Winters *v.* Fleece.

The contract itself must give the measure of damages for its breach: *State* v. *Ward*, 9 Heis., 101. And this contract does clearly define "the expense, damage, or injury" against liability for which the "collateral security" is provided. It is only such expense, damage or injury as may be incurred or sustained in completing the work after breach of the contract, or declaration of forfeiture. No other element of damage is admissible.

In this view the right of the complainant is clear, the defendants having in fact done no work in execution of the contract after they had themselves terminated it by declaring a forfeiture, nor re-let the work, and having agreed with the company to abandon their contract, whereby any further work became impossible, and having received the full amount due for the work actually done. They hold the retained percentage as the money of the complainant, the purpose for which it was pledged as collateral having ceased to exist.

The decree below must be reversed and a decree rendered here in favor of the complainant for the money retained, $1,351.95, with interest from the 27th of January, 1871, and the costs.